No. 2,387.

THE PEOPLE OF THE STATE OF CALIFORNIA, APPELLANTS, *v.* P. HENDERSON and CERTAIN REAL ESTATE, RESPONDENT.

MEASUREMENT OF DISTANCE ON A NAVIGABLE STREAM.—Where a certain distance is called for from a given point on a navigable stream to another point on the stream, the measurement must be made by its meanders and not in a straight line.

IDEM.—ON A PUBLIC HIGHWAY.—The same rule prevails when the distance is called for upon a traveled highway.

BOUNDARY ON A NAVIGABLE STREAM.—When a tract of land is bounded upon a navigable stream, the distance upon the stream will be ascertained—in the absence of other controlling facts—by measuring in a straight line from the opposite boundaries.

BOUNDARY LINE BETWEEN MERCED AND STANISLAUS COUNTIES.—The Act of February 13, 1868, to define the boundary line between Merced and Stanislaus counties was operative to establish the boundary as indicated at once upon its passage, and was not dependent upon the surveys.

APPEAL from the District Court of Thirteenth District, Merced County.

This action was tried by the Court and judgment entered in favor of defendants. Plaintiff moved for a new trial. which was denied; from the judgment and order denying the motion for a new trial this appeal is taken.

The other facts are stated in the opinion.

*Jo Hamilton*, Attorney-General, for Appellant.

*First*—It was the intention of the Legislature, in ordering a survey to be made, to make the survey determine the

boundary between the initial points, where no natural boundary is given; and, until the survey is made which is to fix the line, the jurisdiction on the line to be surveyed remains as left by the Act of March 8, 1866.

*Second*—The survey was not made until long after the time when the lien for taxes had accrued to Merced. If Stanislaus acquired the territory after the lien accrued she did not thereby acquire any right to the taxes of that year. (*Moss* v *Shear*, 25 Cal. 38.)

*Third*—Taking the language of the statute, it is apparent that the Legislature did not intend to be understood as respondents contend.

"Beginning at the Stakes monument, thence in a *straight* line to a point on the San Joaquin River seven miles below the mouth of the Merced River."

This is the first call in the boundary mentioning the river. The line commences straight, and runs to a point in the river, and as if to show that it was not the intention of the Legislature to make this seven miles by the meanders of the river, they make the river by its *meanders* the line from that point up to the mouth of the Merced.

*John W. Armstrong* and *Thomas A. Caldwell*, for Respondents.

*First*—In taking the distance from one point to another on a navigable river, the measurement should be by its meanders and not in a direct line. (*Johnson* v. *Pannell's* Heirs, 2 Wheaton, 206; 4 Peter's Condensed Rep. 84; 4 Curtis' Rep. 79.)

So also where the distance called for is upon a road. (*Bodley* v. *Taylor*, 5 Cranch. 191; *Hite* v. *Graham*, 2 Bibb. 144-5 ; *McKee* v. *Bodley*, Id. 482 ; *Whittaker* v. *Hall*, Id. 79 ; *Craig* v. *Hawkins* Id. 53.)

This rule was recognized in *Kimball* v. *Temple*. (25 Cal. 449.)

"It is well settled by numerous authorities that where a river is named as a boundary, the boundary line follows the meanders of the stream." (*Hicks* v. *Coleman*, 25 Cal. 142;

*Greenleaf* v. *Kilton*, 11 N. H. 531; *Luce* v. *Carley*, 24 Wendell, 451; *Morrison* v. *Keen*, 3 Greenleaf, 474; *Devaston* v. *Payne*, 2 Smith's Lead. Cases,. and 243–4, and cases therein cited.)

*Second*—The taxes levied on the land described in the complaint in this action, for the fiscal year A. D. 1868, by the Board of Supervisors of Merced County, prior to the passage of the Act of the Legislature defining the boundary line between the counties of Stanislaus and Merced, approved February 13th, 1868, (Stats. 1867–8, p. 56.) did not become a lien upon said land in the county of Merced, at the time the taxes were levied thereon, and the taxes so levied on said land in Merced County never attached as a lien thereon, and were not payable in said county.

The Board of Supervisors in each county in this State were authorized and required by law to levy the taxes for the fiscal year A. D. 1868, at any time between the 28th day of February and the first Monday of April in said year, and the act of the Board of Supervisors in levying the taxes in Merced County for the fiscal year 1868, prior to that time, was an absolute nullity. (See Statutes 1867–8, p. 82.) The land described in the complaint was, on and after the 13th day of February, A. D. 1868, situated in the county of Stanislaus, and the taxes for said fiscal year thereon duly levied by the Board of Supervisors of Stanislaus County prior to the first Monday of April, A. D. 1868. When such taxes became a lien upon said land, which could not be satisfied or removed until all the taxes thereon assessed were paid, or the land vested absolutely in a purchaser under a sale for taxes. (Stats. 1867–8, pp. 56, 82–3; Moss *v.* Shear, *supra*; Ex parte Corbett, unreported case July Term, 1867.)

TEMPLE, J., delivered the opinion of the Court; CROCKETT. J., RHODES, C. J., and WALLACE, J., concurring.

By an Act approved February 13, 1868, the Legislature established the permanent boundary between the counties

of Stanislaus and Merced. The first line called for in that Act is from a monument "at the southwest corner of Tuolumne County and the southeast corner of Stanislaus County, in a straight line to a point on the San Joaquin River, seven miles below the mouth of the Merced River." By the second section of the Act the County Surveyors of the two counties were required, within ninety days after the passage of the Act, to survey and mark the line as established. The surveyor of each county complied with this requirement, but the surveyor of Stanislaus County run the first line to a point on the San Joaquin River, seven miles below the mouth of Merced River, measured by the meanders of the San Joaquin River, while the surveyor of Merced County run to a point on the San Joaquin River seven miles below the mouth of the Merced, measured in a straight line. The defendant lives between these two points, and this suit is brought to collect taxes assessed against him in Merced County for the fiscal year 1868. The defense is that the land against which the taxes were assessed is in Stanislaus County, and had been duly assessed in that county and the taxes paid.

There seems to be no conflict whatever in the authorities, that where a certain distance is called for from a given point on a navigable stream to another point on the stream, to be ascertained by such measurement, the measurement must be made by its meanders and not in a straight line, and the same rule prevails when distance is called for upon a traveled highway. A different rule is sometimes adopted when the stream is not navigable. When a tract of land is bounded upon a navigable stream, the distance upon the stream will be ascertained—in the absence of other controlling facts—by measuring in a straight line from the opposite boundaries.

The San Joaquin River has been declared navigable to Tulare Lake, and there is nothing in the Act in question to indicate that a different rule was intended to be adopted to ascertain the line in controversy.

We think it very plain that the Act was operative to establish the boundary as indicated at once, upon its passage,

and was not dependent upon the surveys. The surveys were intended to mark the line which had been established by the Legislature. It follows that, at the time the taxes were levied, the land described in the complaint was not in Merced County, and the taxes assessed in that county never became a lien.

Judgment and order affirmed.

SPRAGUE, J., expressed no opinion.